**STATE of Missouri, Respondent,**

v.

**Louis THOMAS, Appellant.**

**No. WD 46746.**

Missouri Court of Appeals,
Western District.

July 20, 1993.

N. Scott Rosenblum, Barbara L. Greenberg, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., John M. Saleeby, Asst. Atty. Gen., Jefferson City, for respondent.

Before FENNER, P.J., and SPINDEN and SMART, JJ.

SPINDEN, Judge.

A jury convicted Louis Thomas of rape, but it considered evidence that Thomas had made a sexual advance toward another woman in an incident not related to the alleged rape. Thomas alleges that the evidence so inflamed the jury's passions and prejudices that it prevented him from receiving a fair trial. We agree. We reverse his conviction and remand the case for a new trial.

The rape charge arose out of an incident on August 7, 1991, when Thomas allegedly forced sexual intercourse with T.P. at the University of Missouri–Columbia where Thomas and the woman were students. Thomas argues that the sexual encounter was consensual. On June 20, 1991, after having lunch with T.P., Thomas drove her to her apartment. She invited Thomas in to watch television when he agreed to connect it to the cable outlet. Inside the apartment, Thomas looked in each room, including the laundry room, where he switched the light on and off and closed the door. He asked whether anyone else was present in the apartment. While Thomas worked with the television, T.P. went upstairs to her bedroom. Thomas soon followed her upstairs and sat on the bed where T.P. laid. They talked a bit before Thomas left the room, saying he was returning to the university. T.P. immediately went to sleep. She awoke with Thomas on top of her. He told her that he was lonely, that he loved her and that he did not want her to be with her boyfriend who did

not love her. He forced sexual intercourse with her after she resisted. He got up when she began crying and left the apartment.

To bolster T.P.'s accusations against Thomas, the state offered the corroborating testimony of another female student at the university, T.C., who related an earlier incident with Thomas at her apartment. She said that she knew Thomas and let him into her apartment. Inside, he looked into the bedrooms and switched the lights on and off. He returned to the living room and began hugging her and touching her all over her body. He told her that he always wanted to be with her but she was always with her boyfriend. She told him she did not "like him [that] way." He forced her onto the couch and lay on top of her and began kissing her. She pushed him away with her knees. They fell to the floor where they sat briefly with Thomas holding her arm. The phone rang, and T.C. pulled away to answer it. She told the caller that Thomas was there and was doing "something she did not like." Thomas left.

The trial court allowed T.C.'s testimony because it "had a legitimate tendency to directly establish the defendant's guilt of the crime charged." The court reasoned that the second incident "occurred near the time of the offense charged and was of such similar nature as to show a common scheme or plan and a unique and special modus operandi."

■■■ The trial court should have excluded the testimony. "[E]vidence of prior uncharged misconduct is inadmissible for the purpose of showing the propensity of the defendant to commit such crimes." *State v. Bernard*, 849 S.W.2d 10, 13 (Mo. banc 1993). *See also State v. Sladek*, 835 S.W.2d 308, 314 (Mo. banc 1992). A jury should not convict a defendant merely because it infers that the defendant has a general propensity or proclivity to commit crime. *State v. Brooks*, 810 S.W.2d 627 (Mo.App.1991).

■■■ On the other hand, evidence of other, uncharged misdeeds is admissible to prove motive, intent, preparation, common scheme or plan, knowledge, identity, or absence of mistake or accident. If evidence of prior misconduct does not fit into one of these exceptions, it must not be admitted unless it is logically and legally relevant. *Bernard*, 849 S.W.2d at 13.

■■■ The state argues that the evidence fits within the common scheme or plan exception. To fit within this exception, the evidence must be "nearly identical to the charged crimes and so unusual and distinctive as to be a signature of the [defendant's] modus operandi." *Id.* at 19. The uncharged crime must be more than merely similar; it must be "so unusual and distinctive that the prior acts resemble the signature of the defendant's involvement in the present crime." *Id.*

■■■ The state emphasizes that both of Thomas' victims were university students and Thomas' friends, that Thomas did not use a weapon or threaten bodily harm in either incident, that he attacked both victims without warning, that he spoke of loneliness and of the victims' boyfriends in both cases, and that in both cases he walked through the victims' apartments flipping the lights on and off. These acts, even taken together, were not so unique and distinctive as to amount to Thomas' "signature." The actions noted are common, not unusual. Similarities between the incidents is not sufficient.

■■■ The state also argues that challenged evidence was admissible because it tended to show absence of mistake. The state asserts that the evidence demonstrated that Thomas was able to determine when his victims found his sexual advances undesirable. It argues that the jury could "draw upon the episode at [T.C.'s apartment] to infer that Thomas understood that T.P. was refusing his advance." We disagree. Establishing that Thomas was aware that T.C. did not want his hugs and kisses has no relevance to whether Thomas knew that he did not have T.P.'s consent to engage in sexual intercourse.

We, therefore, reverse the trial court's judgment. We remand the case to the trial

court for a new trial with instruction that it exclude evidence concerning the uncharged incident with T.C.

FENNER, P.J., concurs.

SMART, J., concurs in a separately-filed opinion.

SMART, Judge, concurring.

I concur in the result because I believe the similarities of Thomas' alleged actions in the two incidents were not sufficiently compelling as a "signature" of the defendant's *modus operandi* to warrant admission, especially in the face of the obvious serious potential for prejudice. I write separately simply to state my view that the law requires only that the evidence of other wrongdoing, taken as a whole, be sufficiently similar as to be distinctive or unusual. It is not necessary that any single act of the defendant, standing alone, be unusual or bizarre.

Jurors tend to require corroboration in sexual assault cases.[1] Sexual assault is usually perpetrated in private. If the victim is not beaten, and there is no evidence that a weapon was used, jurors will look for corroboration in the form of medical testimony. If there is no medical corroboration, the victim is very likely to be disbelieved. Consequently, there may be a high degree of probative value to logically relevant, material evidence which supports the victim's testimony of the commission of a sexual assault.

Defense attorneys are aware that if the only issue is consent, they will often be able to keep out of evidence any testimony as to other, even very similar, criminal acts of the defendant. If the defendant's testimony as to consent sounds reasonably plausible, the victim's testimony often will be disbelieved. *See* Comment, The Admissibility of Other–Crimes Evidence In Ac-

quaintance–Rape Prosecutions, 17 So.Ill. L.J. 341 (1993). If, however, the evidence of the defendant's previous distinctively similar actions are received in evidence as reflecting on the probability of the events occurring as described by the victim, the victim's testimony will logically and properly be regarded with less skepticism. It is unjust to the victim, as well as to society, to require the victim to climb a mountain of skepticism when there is available evidence of substantial probative value which reveals the distinctive modus operandi of the accused.

The trial judge is in the best position to evaluate the potential prejudice to the defendant, and to weigh the legitimate probative value against the potential for prejudice. The court should guard against allowing evidence to be admitted simply for the inference that the defendant is a person of bad character and therefore committed the crime, or that he has a general propensity for sexual assault and therefore committed the crime. But the jurors should be permitted to evaluate the reasonable probability of the respective versions of the testimony in the light of evidence of distinctively similar criminal acts committed by the defendant.

In this case, Thomas' alleged actions with T.C. were different from his alleged actions with T.P., most notably in that he never forced T.C. into sexual intercourse. When the telephone rang near T.C., Thomas allowed her to answer the telephone, although he could have kept her from answering. The evidence of his conduct with T.C. fails to amount to a signature *modus operandi* when compared to the acts charged in this case.

---

**1.** It may be true that *modus operandi* evidence is a form of corroboration which, necessarily, reasons from the character or propensity of the accused to the commission of the act charged. *State v. Bernard,* 849 S.W.2d 10 (Mo. banc 1993) (Robertson, C.J., concurring) and (Thomas, J., concurring). Nevertheless, it should be admitted. We usually exclude evidence of other crim-

inal acts of the same general type, not because the evidence is logically irrelevant, but because we deem the risk of prejudice to outweigh the probative value. We allow such evidence only when there is a particular reason that the probative value outweighs the risk of prejudice. *See State v. Sladek,* 835 S.W.2d 308 (Mo. banc 1992) (Thomas, J., concurring).